Who's arguing first? I'm sorry. I am, Your Honor. Mr. Cortice with the... Okay, Mr. Cortice. Twelve minutes. Thank you. Good morning, Your Honors. Aaron Cortice with the Northwest Immigrant Rights Project on behalf of the AMICI. Washington's misdemeanor harassment statute creates an indivisible crime that can be committed in several different ways, including by threatening to cause physical damage or threatening to confine someone. Now, the government contends that this low-level crime is an aggravated felony under the INA because it's a crime of violence under 18 U.S.C. Section 16. But the Washington harassment statute and its plain text, as well as Washington case law, reveal that this statute is, in fact, overbroad because it encompasses conduct that isn't violent force. Now, first of all, it's important to remember that the crime of violence definition requires some application or threatened application of violent force. The Supreme Court reiterated that as recently as 2019 in the Stokeling decision, saying there, with respect to the robbery statute there, that the kind of force that's necessary is that to, quote, overcome a victim's physical resistance. Such violence, the Court said, is inherently violent because it, quote, necessarily involves a physical confrontation and struggle. And in the Johnson 2010 case, which the Supreme Court cited in Stokeling, the Supreme Court said that the crime of violence definition requires physical force, or physical violent force, i.e., force capable causing physical pain or injury to another person. And the 2004 Leocal case from the Supreme Court, too, said, look, this crime of violence definition requires a, quote, category of violent active crimes. Now, Washington's misdemeanor harassment statute doesn't require that kind of conduct. And that's, first of all, true because of subsection 1A little 2 of the statute. And that's the part that criminalizes threats to, quote, cause physical damage. Now, under Washington's case law, Washington courts have repeatedly said that the ordinary meaning of physical damage, and that's the language the Washington courts use, ordinary meaning is it includes situations where property is simply altered in some way that requires a cost to restore it to its original condition. So, counsel, in this case, we're talking about a particular statute. So it would be helpful if you could direct us to case law that interprets this particular statute and supports your argument that's interpreted in such a way that does not incorporate physical violence or the threat of physical violence. What case in the state of Washington has interpreted this statute in such a way that there is no physical violence or threat of physical violence required? With respect to subsection 2 of the statute, Your Honor, I think the Swant case from the Washington Supreme Court, which is not a criminal case, but it talks about the statute. Well, generally, when we're looking at the statutes, we look at how the statutes are enforced criminally because we're directed by the Supreme Court that we cannot just look at theoretical application of the statute, but how the statute has actually been applied in the criminal prosecutions in the State. And so unless you can give us an example where there has been an actual application of the statute in the criminal context that is overbroad, it's difficult to make that argument to me. I agree, Your Honor. That is how the categorical approach applies. But I think that the cases that I'll give you demonstrate how in Washington it is, in fact, and can be applied overbroadly. In the criminal context. Yes. So the Swant case talks about Washington criminal harassment, and it said there that where protesters had, quote, defaced and damaged Mayor Durkin's home, she was the mayor of Seattle at the time, that was criminal harassment. And the language caused physical damage in the Washington statute has repeatedly, over and over, been interpreted to encompass things like the application of graffiti or defacing property. Now, those cases are admittedly from the malicious mischief context, but those cases use the exact same language as the Washington harassment statute. Is it your position that spraying graffiti does not cause physical damage to a building? I agree it causes physical damage, but what it calls here, to cause physical damage to the property. Correct. That is what the statute requires. But that doesn't require the application of violent force, which is what the crime of violence definition requires. Or the threat of. Or the threat of. Yes, Your Honor. And so these cases from the Washington malicious mischief context are instructive because they use the exact same language as the harassment statute. They criminalize threats to, or they criminalize causing physical damage. And the harassment statute criminalizes threats to do that. And I just want to provide a few citations for that. So the Berry case, 184, Wash App, 790. Or the Aguilar case, 95, Wash App, 1059. Or Foxhoven, 161, Wash, Second, 168. All of these are examples of Washington courts. But they're not in the context of prosecuting for this particular statute. That's the — and that's what the Supreme Court has told us, that we need cases where this particular statute has been — has resulted in prosecution of someone in a way that makes it clear that the statute's overbroad. And I don't — I don't hear that. So, Your Honor, I disagree that you have to always show a case from this particular statute. There's two ways, of course. Because that's a bit of a — because this is the statute we're looking at. And so heretofore, there have been cases applying the actual statute in the criminal context where individuals have been prosecuted for violating the statute at issue. And, Your Honor, if the — but this Court, as recently as its recent en banc decision in Alfred, has said, if the plain language of the statute shows it's overbroad, that's enough. And the plain language shows it's overbroad here because you can cause physical damage in Washington by doing these things. Another good example is the Norenk case, 137, Wash App, 1039. The proposition seems to be that you can cause physical damage without acting violently. Is that right? That's correct, Your Honor. Things like — Do you think that the owner of a building that has graffiti put on it doesn't think that it's in violence of his rights? I agree that he — the owner of the building has a reason to feel aggrieved, but that doesn't mean that they — Or threatened. — violent force was applied there. Was it just a moderate force or a slight force? It was — No force? Did it just happen that way just because — Your Honor, it was perhaps the slightest application of — Of what? — to push the button on the spray paint can, right? But that's all that's required. And, in fact, the Tenth Circuit has said — resolved this exact question. And it said in the Bowen case, 936, F.3D 1091, that, quote, we easily conclude that the act of spray painting another's car does not entail the use of physical force. If this Court were to rule otherwise, it would be — it would create a circuit split as to that issue. And this Bowen decision from the Tenth Circuit reviewed Stoeckling. It reviewed the Johnson decision, all concluding that, yes, the statute requires violent force, and spray painting someone's car isn't enough. And I was about to cite the Nornk case from Washington, which is another — it's not graffiti, but it's another example. There, the Court said, quote, the ordinary meaning of damage is injury or harm to property. Counsel, has anyone been prosecuted under this statute in the State of Washington for spray painting?  That's a yes or no question. I have — Has anyone in the State of Washington been prosecuted under this statute for spray painting a household car? Your Honor, no. Not that I have found. That said, the Swamp case I mentioned earlier by implication says that that kind of thing is encompassed in the harassment statute. And cases like the one I was just citing — or I've cited several from the malicious mischief context, which use the exact same statutory language, and say that's physical  damage or — But they're prosecuted under that statute. That's the point. They're not prosecuted under this statute. They're prosecuted under the malicious mischief statute, which implies that this statute is not interpreted by the Washington courts in the criminal context in the way that you're urging us to interpret it. I respectfully, Your Honor, I disagree because the statutory language is exactly the same. And before that reason — Our inquiry is whether or not the Washington courts have interpreted the same in the criminal context, in the process of prosecuting. And, Your Honor, I guess that's what I'm trying to say, is that in all these criminal cases that I have cited, Washington courts define what physical damage is in the context of the malicious mischief statute, which criminalizes the actual conduct. Then, under the — by extension, the harassment statute, which criminalizes the threats to do those things, naturally would include things like applying graffiti. And, in fact, if you look at the statute, subsection B of it, which talks about a different crime, but it says that individuals are convicted of a Class C felony if, quote, the person has previously been convicted in this or any other state of a state. And if you look at that cross-reference subsection, it defines a whole list of things that are, quote, crimes of harassment in Washington. And it includes malicious mischief, the statute I've repeatedly been referencing. It includes things like unlawful imprisonment and kidnapping, which go to the other subsection that we raised in our briefing and about why that's overbroad. So all of those cross-references underscore that Washington, even according to the fine text of the statute, says that this is a very broad statute. It is meant to incorporate all kinds of different conduct. Counsel, since you're out of — almost out of time, I would like to turn your attention for a moment to the other section that you rely on as being overbroad, which is the threat of physical confinement. So do you have any basis for contending that the — either directly interpreting the statute or a similar statute that physical — or threat to physical confinement would include, for example, threatening to just lock someone in their room? Yes, Your Honor. So the cases like MAR and ONG, which we cited in our briefing, those are from the people were deceived effectively into being kidnapped or unlawfully imprisoned. And so those two show that this kind of thing, in other words, being physically confined, cannot be accomplished by deception. And Washington courts have said if the crime can be accomplished or if unlawful imprisonment can be accomplished by intimidation or deception, that's not something that requires any bodily injury, apprehension of harm, or an unlawful touching. And that's the Van Gringbergen case, which, again, we cited in our briefing. So that, too, is yet another example of how under this statute people can be convicted of crimes that don't involve any threatened application of violent force, which is what the statute requires. Counsel, the question is not whether they can be convicted, in my mind. It's whether the Washington courts have interpreted the statute and people have been convicted. If the statute has been on the books for a number of years and there hasn't been any convictions under that statute, that's an indication to me that the Washington courts are not interpreting that statute in the way that you are advocating. And my response to that, Your Honor, is the same one, that because the language in the malicious mischief context, which is the exact same as the statute at issue here, has repeatedly been interpreted to encompass this kind of conduct that doesn't fall within the scope of the crime of violence definition, that same language, which is just threats to do the things that are in the malicious mischief statute, also can't be interpreted in that way. I understand, but it appears to me that those individuals are being prosecuted under the malicious mischief statute as opposed to the harassment statute that you're challenging here. But you've exceeded your time. We'll give one of you a minute for rebuttal. May I ask one question? Oh, of course. Counsel, I have a note here that you're arguing that the de minimis property damage can be accomplished without violence. Is that right? Yes, Your Honor. Right. But is that argument supported in the petitioner's or appellant's opening brief, or has it been forfeited? Well, Your Honor, petitioner has raised the issue here, right, which is whether the crime of the harassment statute is overbrought. AMICI are here to provide additional arguments as to why that statute is overbrought. I think your answer is it was not raised in the appellant's opening brief, but it is being raised by AMICI. That's correct. And in cases — Correct. Thank you very much. Thank you, Your Honor. Mr. Shambu? Yes, Your Honor. Good morning, Your Honor. May it please the Court. David Shambu for petitioner. Your Honor, given the amount of time I have and the complexity of the issues, I'm going to focus my two minutes plus on the cap claim here. What's troubling with the IJ and the BIA's decision here, and I'm going to ask the Court to actually look at the IJ's decision in the record, it's at 48 or 47 to 48. It seems like the judge, and in many cases that comes before the Court, there's absolutely no evidence of likelihood of torture in the future. In this case, there's absolutely no dispute in the judge's decision. When you look at the Court's decision on 48, the Court says, while the record as a whole indicates a real possibility. The judge is not saying it's just possible, but the Court says there's a real possibility that petitioner could be tortured in Mexico with the consent, acquiescence, or willful blindness of government officials there. The record does not reflect a more likely than not probability of torture. It makes no sense. There's ample evidence within the record for the judge to reach a conclusion that there's a real possibility that the petitioner is going to be tortured when he goes back to Mexico, yet the judge says, as the prior case that was before you, 2 plus 2 is not 4. There is no torture. Counsel, I think the distinction is between possibility and likelihood. Well, this judge doesn't just use the term possible. There is force. I mean, there's a reason this judge is using the term real. Now, I don't know why they didn't just say possible and say it's not likelihood, but the judge explains what it means to show probability of future torture, or the more likely than not on page 47. Yes, there was no prior torture in this case, but everything else was provided to the court to show that there's expert testimony by way of the record that was provided by Thomas Foreman, country conditions, even a letter that was not needed. You don't need corroborating evidence in a CAD context, but even the letter from the aunt was provided. So it's troubling that the court says in black and white that there's absolutely no reason to believe that there's no real possibility of torture, but goes on to say that it's not more likely than not. How does this judge make that connection? It is not clear. So this means this decision is not supported by substantial evidence. The court should reverse this, remand it to the BIA for reversal. If not... Thank you, counsel. Could you wrap up? And if the court does, in the alternative, wish to send it back for clarification to the BIA with instructions to the IJ to make it clear how that decision was reached from the real possibility of torture at the acquiescence of the government officials to no likelihood at all. Thank you, your honor. Thank you, counsel. We'll hear from the government. Good morning, your honors. May it please the court, Andrew Nsinga on behalf of the Attorney General Merrick Garland. Under Stoeckling, which amicus and petitioner ignored in their briefs, a conviction under any of these four sections constitute a crime of violence. Each involves a threat of an action capable of causing damage or pain. Petitioners have, and amici, have presented a scattershot of assertions, and I'll start focussing. The petitioners now do not particularly talk about the threat to cause bodily injury immediately or in the future to a person. They don't dispute that when you threaten to cause bodily injury, that there is going to be, under Johnson and Stoeckling, a concrete action. There's not an intellectual or emotional force being used here. When you threaten to cause bodily injury, there's a threat of harm capable of causing pain or injury. Petitioner's brief argues that, well, there's a concept of great bodily injury in Washington State. That's not relevant. Great bodily injury or threatening to cause great bodily injury or threatening to cause murder or death or severe harm may certainly be a crime of violence, as this court recognized in Worley. But then, of course, then lesser threats can. Indeed, that is the thrust of Stoeckling, that it does not have to be a particularly violent action. There's no particular quantum of force required, just one capable of causing pain or injury. Petitioners, or I should say amici, focus on the to cause physical damage to property. Now, first of all, Your Honor, it's a particularly difficult thing procedurally when amici come to this court and cite case law and statutes that are not in anyone's briefs. So I can't particularly provide this court so much insight on this sort of malicious mischief argument other than to say that's not this statute. We're not talking about a conviction on that statute. I can't say, because nothing's ever been discussed, whether that statute's relevant whatsoever. But regardless, when we look at this court's decision in Ward, again ignored by both amici and petitioner, that it recognizes Stoeckling simply required an action capable of causing injury or damage. And again, Petitioner Keene... So physical force that's capable of causing injury or use of physical force against a person. First of all, that was the context of Stoeckling, use of physical force against a person capable of causing bodily injury, damage. And in the Tenth Circuit case, Bowen, the Tenth Circuit said, well, they weren't interpreting the against property clause, and they make a distinction. So can you address the Tenth Circuit's reasoning in Bowen? Well, a distinction was not a difference, Your Honor. We can't read the threat to property out of the statute. Congress wanted to include either force against or threats to property. Again, Petitioner site discusses, say, graffiti. Well, again, how does one accomplish graffiti without using physical force? Kerr-Johnson, this is not an intellectual action. This is not an emotive force. This is some manner of force, direct or indirect. We have Supreme Court case law saying mere offensive touching, not enough. Then we have Stoeckling saying, well, the force necessary to overcome the victim's resistance is enough. I understand the Tenth Circuit to be saying, when you're interpreting this in the crime and violence context and against property, that spray painting is more akin to, you know, mere offensive touching, which is not enough under Supreme Court precedent. Except it ignores the concept of a force capable of causing damage. What Stoeckling emphasizes is it doesn't have to actually cause damage. And, of course, we're not going to have actual injury or damage or pain to either property or person in the threat context. And, of course, Congress includes that in its concept. But, again, petitioners don't even explain on an intellectual level, how does one do graffiti through some sort of unphysical action? This court's decision in Amaya is indicative. There, the person exposed the person to HIV. There's not a particular action or particular level of force that has to be done. Or, for example, when this court has repeatedly rejected the concept that poisoning someone does not involve force in the body because you're doing it indirectly. But, again, petitioners don't explain. And Bowen doesn't explain, as the dissent points out, and the Second Circuit rejected. How do you do these actions or how do you threaten these actions without some sort of force capable of causing it? We're not in the world of just making stuff up. We're in the world where we have statutes and we can look at case law. And in this statute, we have nothing to suggest that one could be convicted or has been convicted, of course, that an individual did threaten to do anything without doing something capable of causing physical pain. I also want you to address the same hypothetical I presented to counsel for Amiki, which is under Washington law, the criminal harassment, misdemeanor harassment statute that criminalizes the threat to physically confine someone. So if you threaten to lock someone in their room, how does that necessarily entail the use of violence force against the person? Well, what it involves is force capable of causing injury or pain. How? What Ward emphasizes. I know that's your assertion, but how? If I just simply say, I'm going to lock you in your room. How does that necessarily entail the use of physical force against the person? Well, again, the difficulty here is that Petitioner's argument is based on a completely different statute, which is about unlawful imprisonment. Petitioner doesn't explain it. Well, I just think the plain language of threatening to physically confine someone, it seems to me, would encompass threatening to lock someone in their room. So how does such a threat necessarily involve the use of physical force capable of causing bodily injury or harm? Well, let's presume that theoretical admits the state definition, which we don't know. But even assuming that it does fit a plain language definition of it, again, how is one going to threaten to do that with involving some manner of physical force? Again, Petitioner's argument is based on the concept of deception, which isn't even in the statute. So how, then, is a person going to threaten, and the person must know of the threat? How is that person who's being threatened to be locked, how is that not going to involve some manner of physical force capable of causing pain or injury? It's just we're now left in the world of anarchy's legal imagination, largely based on other statutes. Well, the Supreme Court in our case law is pretty clear that if the plain language supports the interpretation, we don't need an example of actual prosecution because we can't ignore the plain language of the statute. And we only look for, then, cases that have limited the language of the statute, narrowed it such that it doesn't support the plain language. They've said that the plain language should be narrowed. I don't know of any Washington case that has narrowed the definition of threat to physical confinement. Well, the statute limits it to physical confinement. The statute says threat of physical confinement of the person threatened or another person. So I could say I'm going to threaten to lock your kid in their room while they're sleeping. I don't see how that is necessarily involving the use of physical force capable of causing injury or bodily harm. So I know you're saying they haven't proven that it doesn't, but I'm asking you. You're asserting that it does. And in what way does that necessarily require the use of physical force? It's the use or threatened use of physical force, not just the actual use. Right. So if I threaten to lock someone in their room, how am I threatening to use physical force against that person? Well, first of all, again, Your Honor, the difficulty with the plain language analysis is how does it fit a plain language analysis? What we need is amici or petitioner to point out this is how Washington courts understand it. Now, the government pointed out that there is a case in which the Washington courts do talk about the notion of a threat of physical confinement or restraint. And in that case, the individual sitting next to the victim at a bus stop and said he was going to mess her up if she moved and repeatedly said things suggesting that if she moved, he would harm her. Now, the difficulty, again, with the plain language is we could sit here and pause it by changing words, as amici largely does. Well, maybe this fits a definition. But again, now we're going down the road of the legal imagination. So is that a conviction under Washington state? I have no idea how that necessarily would. But let's assume that it does. Again, how then would you box, how is the person going to be aware of a threat when they're being deceived or when it's not being communicated? Again, Washington state says this is about real threats, not idle threats. Well, the Washington statute, that's at issue here, encompasses a threat against the person or another person. So you could threaten to deceptively physically confine a different person, couldn't you? It especially encompasses threats to the victim or another person. Again, this statute does not include the concept of deception. Petitioner or amici cite two cases involving a completely different statute. We could play this word game of changing words based on different statutes, but Washington courts don't do this. So again, a plain language analysis... Wasn't this a misdemeanor statute, and how many cases are we going to get where Washington courts have had to interpret this statute? Well, there are some cases. Amici largely have ignored them for citing other statutes in other cases. The statute that amici counsel cited, were those misdemeanor cases? The... The malicious mischief cases? Were there misdemeanor cases? Unfortunately, those are not cited in the brief. Well, that's true. That's fair. I don't know. I'm sorry. I can't answer unraised questions, and this is part of the difficulty of procedural notion in this case. Well, I think there's lots of cases that say that it's claims and defenses that are waived, not legal arguments, and so when you have a legal argument, all legal cases are in play. Your Honor, well, even if that's true, I can't answer questions on cases never presented at this court. Unfortunately, that's simply a limitation of me as an individual as a litigator. If a party comes, or a non-party, in fact, comes to the court citing cases that have never been presented at this court on case law that's never... on statutes that have never been presented at this court, there's no way to respond to them. But, Counsel, for the categorical approach, don't we focus on how the state court has interpreted the particular statute at issue in terms of realistic probability of prosecution? If the state has not prosecuted under this statute, isn't that what we look to to see whether or not there's a real probability that this statute will be used to prosecute for the particular crime at issue? That is largely true, Your Honor, under Duenas-Alvarez. There is some complexity when we say we should look at the plain language of a statute. The difficulty is when the plain language analysis veers off into relying on other case law or other statutes, then we're just simply not talking about a plain language analysis. And Petitioner and Amici were free to present any cases, state cases, that suggested that the Washington State's courts have interpreted the statute to context that does not involve Stokelyne's definition of a crime of violence. They simply failed to do that. But that's not a plain language argument. If you're having to extrapolate from other cases from a different statute, then that's not plain language analysis, is it? Correct, Your Honor. I think that's perhaps a better way of saying what I'm trying to say. This is not a plain language analysis when we are relying on other statutes and case law to interpret this. Again, I can't answer about some case law since it hasn't been briefed, but my generic answer would be that's not this statute. I will touch simply briefly on the point raised by Petitioner. First of all, that's an unexhausted abandon claim. Petitioner was free to raise that claim both before the board. Petitioner was free to raise in the opening brief. Petitioner did not. That said, and without abandoning those issues, the reality is the immigration judge simply said, yeah, there's a possibility. But possibility is not the standard. It is more likely than not. There's no inconsistency here. Petitioner, it's clear from the plain language that the immigration judge said that Petitioner failed to meet the requirements. That's more likely than not. That's a probabilistic standard. Unless, Court, any further questions, we ask that the Court deny the petition. All right. Thank you, Counsel. Let's have one minute for rebuttal. I assume, Mr. Korthes, you'll be doing the rebuttal. If that's okay with Mr. Shimloo, Your Honor, yes. All right. Please proceed. Thank you, Your Honor. First, this is not a case that simply involves legal imagination. So I cited the Swant case, for example, earlier, which talked about criminal harassment. And it said, defacing property is criminal harassment. And as Judge Sun pointed out, it is the case, though, that where the plain text renders the statute overbroad, that's sufficient. And that's exactly the kind of argument we've raised with both subsections here. Washington courts have repeatedly said, this is the ordinary meaning of physical damage. Washington courts have also said that when you use words in different or the same words in different parts of the statute, you interpret those the same. That's the 189 Wash 2nd, 607. The Washington court said that. So that is why we're relying on these other cases from the malicious mischief context or the unlawful imprisonment context. They use the same words, and they demonstrate that these crimes can be committed in ways that do not involve the threatened application of violent force. So for all of those reasons — Misdemeanor statute? I believe so, Your Honor. So those cases were reported even though they were misdemeanor crimes, correct? Yes, Your Honor. Yeah. And I can provide the RCW site if that's helpful to the court for the malicious mischief statute. But it, again, uses that language, cause physical damage. All right. Thank you, counsel. Thank you, Your Honor. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BEA, SUNG